Judge Owsley
delivered the Opinion of the Court.
This writ of error is brought to reverse a judgment recovered by Haggard, in a proceeding, by petition and summons, upon a note for three hundred and fifty dollars “Kentucky currency,” executed by Larnpton.
The only question to be decided is, whether or not the action bv petition is maintained upon the note. If at the (late of the note, arty thing else but gold or silver had become the only medium of universal *150 circulation, we should have no difficulty in holding that the action by petition and summons could not be maintained; for although nothing but gold or silver can, consistently with the constitution of the United States, be made a legal tender in payment of debts,, the language of parties employed in their contracts must be consumed according to their popular acceptation, and in common acceptation currency of Kentucky never would be understood to mean any thing else but the common circulating medium in the state. If, therefore, gold and silver had ceased to be that circulating medium, at the date of the note, (and whether or not the court is bound judicially to know,) the action by petition, most indisputably, could not be maintained. For as the expressions currency of Kentucky would then be understood to mean something else than gold or silver, the note could not be construed to be for the payment of money, for which and for which only, a petition and summons will lie.
In 1817, gold and silver was the currency, as the court judicially n- - iiccyancblfen tucky currency did then mean money, and on a note lor it petition and summons will lie
it has been otherwise, since suspension of specie payments by file bank of Kentucky and other enrnorutions.
But we do not admit that at the date of the note gold and silver had ceased to be the circulating medium of the state. The note bears date the 12th of July, 1817, and although the Bank of Kentucky was then in operation, it paid specie for its notes and continued to do so for some time the re after. The notes of that Bank, therefore, might then at any time have been converted into money, and instead of forming the currency of the state, may be more properly said to have been the representative of gold and silver, which at the time was, in fact apd in the common understanding of the community, the currency of Kentucky. Thus understanding the expressions currency of Kentucky the note must bo admitted to he for the direct payment of money, and of course the action by petition and summons was correctly conceived.
Wo have not forgotten'that in the case of Chambers versus George, 5 Litt. Rep 335, it was held by this court that a petition and summons could not be maintained upon a note payable “in, the currency of this state.” But the note in that case was given long after 1817, and after the suspension of specie payment by .the bank pf Kentucky, and the non pay *151 ineiit of specie by other banks, subsequently established, had caused a paper circulating medium which in popular acceptation became emphatically “currency of the state.”
Character of the cir-popular Ianguugo in ref- ^ '~l tho^oúrt!^
The expresssionsofeonconstrued uccording to which Jud>’es must &o-° t!Ce-
Tlje %7íi¡ a;_ so notice a:y £¿‘“ní’os1 mennui^oT words mav uadcps°' '
So far, therefore, from being an authority against sustaining the petition in this case the priuciple decided in that case goes to support it. it was by interpreting the expressions “currency of the state” according to their popular acceptation that the note in that case was held not to he for the pay-merit of money; and it is by adopting the same rule of interpretation we arrive at the conclusion that the note in this case is for the payment of money.
We have not, it is true, given to the language employed iri both notes, though very much alike, the same interpretation; but we have hot done so because the interpretation in each case should conform to the popular acceptation of the language at the date of the note, and because we suppose there was-a difference at the different dates of the notes in the popular acceptation of the expressions contained in the notes.
In thus noticing the change which the language employed by the parties has underwent, we have done no more than what we were judicially bound to do.
The propriety of doing so results, as a necessary consequence, from the principle universally admitted, that the expressions of contracting parties must be construed according to their popular acceptation,
That there may be, and are frequent changes in the popular acceptation of words no one can doubt; and how would it be possible for a court whose province it is to expound writings and decide upon their import, to apply and give effect to the principle unless it takes notice, judicially, of any change which in popular acceptation the meaning of words undergoes.
The judgment, must therefore- be affirmed with cost.